UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


MICHAEL JOHN FEDOR,

      Applicant,

v.                                       CASE NO. 8:13-cv-640-T-23EAJ

SECRETARY, Department of Corrections,

      Respondent.

_____/


## O R D E R

      Fedor applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his convictions for both burglary involving a battery and false imprisonment, for which convictions Fedor is imprisoned for life.  The convictions are based on Fedor's plea of guilty.  Although Fedor pleaded without a plea agreement, the state *nolle prossed* one count of sexual battery in exchange for the guilty plea.  Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 9)  The respondent admits the application's timeliness (Response at 8, Doc. 9) and asserts a procedural challenge to neither of the grounds for relief.  The application asserts two claims of ineffective assistance of trial counsel.

## FACTS

      The prosecutor recited the following factual basis when Fedor pleaded guilty. (Respondent's Exhibit 4 at 6–7):

On June 9, 2006, Michael John Fedor — who was known to the victim, . . . she lived within Hillsborough county, he had previously dated her, and she had broken up with him — on June 9th, she returned home from a luncheon engagement at approximately 1:30 in the afternoon. When she walked into her home, she went into her bedroom and began changing, at which point Mr. Fedor came out of her closet, threw her on her bed and began to assault her. He began to hit her. He shoved a rag in her mouth soaked with alcohol. She faked passing out at that point, at which point [the victim] recalls having Mr. Fedor perform oral sex on her. Once he completed that act, she recalls him masturbating at the foot of her bed.

He then duct taped her wrist and ankles. He left the bedroom. He repeatedly threatened her. Once he left the bedroom, [the victim] was able to get her ankles free and ran out of the house. She was naked at that time. Mr. Fedor caught up with her. He dragged her back to her house by her hair, beat her up. He told her no one else could have her. She was able to convince him to let her go and to leave her alone and she would not call law enforcement. He subsequently cut the duct tape off of her wrists and he fled the residence.

She called her mother, who then called 911. When Deputy Craft from the Hillsborough County Sheriff's Office went to the residence, he observed the victim in a fetal position by the door, naked and bruised up. She was taken to Tampa General Hospital for evaluation and treatment of her injuries.

Mr. Fedor fled the county to Pasco County where he resided at the time. He was found by law enforcement in Pasco County. When law enforcement went to speak to him, Mr. Fedor asked, "Is she out of the hospital yet?" without any prompting.

Mr. Fedor was observed to have scratches all about his face and his body.[The victim]'s nails were clipped by crime scene technicians. They were sent to Florida Department of Law Enforcement at which point a DNA match was made to Mr. Fedor. This offense occurred within Hillsborough County, and he can be identified by witnesses.

At sentencing Fedor apologized for his actions, stating (1) that he "lost control

for a time period," (2) that he was "here to take action for what I did," and (3) that he

"didn't want to drag it out any further by taking it to trial."  (Respondent's Exhibit 6

at 173)  Both the victim and her mother testified at sentencing and expressed the need

for a long prison sentence lest the victim feared a future assault.

Following extensive argument from both the prosecutor and defense counsel, the

judge — without elaborating — imposed a sentence of life imprisonment.

(Respondent's Exhibit 6 at 179)

## <u>STANDARD OF REVIEW</u>

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs this proceeding.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th

Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a highly

deferential standard for federal court review of a state court adjudication, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim —
>
> > (1) resulted in a decision that was contrary to, or
> > involved an unreasonable application of, clearly
> > established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an
> > unreasonable determination of the facts in light
> > of the evidence presented in the State court
> > proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a
> federal habeas court to grant a state prisoner's application for a
> writ of habeas corpus with respect to claims adjudicated on the
> merits in state court.  Under § 2254(d)(1), the writ may issue
> only if one of the following two conditions is satisfied — the
> state-court adjudication resulted in a decision that (1) "was
> contrary to . . . clearly established Federal Law, as determined
> by the Supreme Court of the United States" or (2) "involved an
> unreasonable application of . . . clearly established Federal law,
> as determined by the Supreme Court of the United States." Under
> the "contrary to" clause, a federal habeas court may grant the
> writ if the state court arrives at a conclusion opposite to that
> reached by this Court on a question of law or if the state court
> decides a case differently than this Court has on a set of
> materially indistinguishable facts. Under the "unreasonable
> application" clause, a federal habeas court may grant the writ if
> the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to
> the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable, . . . an unreasonable application is different

from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693  (2002).  "As a condition for

obtaining habeas corpus from a federal court, a state prisoner must show that the

state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement." *Harrington v. Richter*,

131 S. Ct. 770, 786–87 (2011).  *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir.

2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court

decision that we are to decide.").  The phrase "clearly established Federal law"

encompasses only the holdings of the United States Supreme Court "as of the time

of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

   The purpose of federal review is not to re-try the state case.  "The [AEDPA]

modified a federal habeas court's role in reviewing state prisoner applications in order

to prevent federal habeas 'retrials' and to ensure that state-court convictions are given

effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694.  A federal court

must afford due deference to a state court's decision.  "AEDPA prevents defendants

— and federal courts — from using federal habeas corpus review as a vehicle to

second-guess the reasonable decisions of state courts." *Renico v. Lett*,  559 U.S. 766,

779 (2010).  *See also Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) ("This is a

'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court

rulings, which demands that state-court decisions be given the benefit of the doubt'

. . . .") (citations omitted).

   In a *per curiam* decision without a written opinion the state appellate court on

direct appeal affirmed Fedor's convictions and sentence.  (Respondent's Exhibit 11)

Similarly, in another *per curiam* decision without a written opinion the state appellate

court affirmed the denial of Fedor's subsequent Rule 3.850 motion to vacate.

(Respondent's Exhibit 24)  The state appellate court's *per curiam* affirmances warrant

deference under Section 2254(d)(1) because "the summary nature of a state court's

decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245,

- 5 -

1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003).  *See also Richter*, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even if there is no "opinion" or "analysis").

Review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits.  Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

*Pinholster*, 131 S. Ct. at 1398.  Fedor bears the burden of overcoming by clear and convincing evidence a state court factual determination.  "[A] determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  This presumption of correctness

applies to a finding of fact but not to a mixed determination of law and fact.  *Parker v.*

*Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).  The state

court's rejection of Fedor's post-conviction claims warrants deference in this case.

(Order Denying Motion for Post-Conviction Relief, Respondent's Exhibit 19)

## GUILTY PLEA

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973), holds that a guilty plea[1] waives a

non-jurisdictional defect:

> [A] guilty plea represents a break in the chain of events which
> has preceded it in the criminal process. When a criminal
> defendant has solemnly admitted in open court that he is in fact
> guilty of the offense with which he is charged, he may not
> thereafter raise independent claims relating to the deprivation of
> constitutional rights that occurred prior to the entry of the guilty
> plea.

This waiver of rights precludes most challenges to the conviction.  *See e.g., United*

*States v. Patti*, 337 F.3d 1217, 1320 (11th Cir. 2003) ("Generally, a voluntary,

unconditional guilty plea waives all non-jurisdictional defects in the proceedings."),

and *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) ("A defendant who

enters a plea of guilty waives all non-jurisdictional challenges to the constitutionality

of the conviction, and only an attack on the voluntary and knowing nature of the plea

can be sustained.").  A guilty plea waives a claim of ineffective assistance of counsel

based on a pre-plea event.

---

[1] A conviction based on a plea of *nolo contendere* is reviewed the same as a conviction based
on a guilty plea. *Wallace v. Turner*, 695 F.2d 545, 548 (11th Cir. 1982).

> In his habeas petition, Hutchins alleges that his trial counsel
> was ineffective for failing to explicitly define and advise him of
> a statute of limitations defense prior to advising him to waive
> that defense and plead guilty.  Hutchins's voluntary guilty plea,
> however, waived any ineffective assistance of counsel claim.

*Hutchins v. Sec'y, Dep't of Corr.*, 273 Fed. App'x 777, 778 (11th Cir.), *cert. denied*, 555

U.S. 857 (2008).  Fedor's admission of the truth of the facts and his admission of guilt

"constitute a formidable barrier in any subsequent collateral proceedings.  Solemn

declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*,

431 U.S. 63, 73–74 (1977).  Consequently, the entry of a guilty plea waives a claim

(other than a challenge to the court's jurisdiction or a challenge to the voluntariness

of the plea), including both a substantive claim and a purported failing of counsel that

occurred before entry of the plea.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Fedor claims ineffective assistance of counsel, a difficult claim to sustain.

"[T]he cases in which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between." *Waters v. Thomas*,

46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386

(11th Cir. 1994)).  *Strickland v. Washington*, 466 U.S. 668 (1984), governs an

ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is
> well settled and well documented. In *Strickland v. Washington*,
> 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the
> Supreme Court set forth a two-part test for analyzing ineffective
> assistance of counsel claims. According to *Strickland*, first, the
> defendant must show that counsel's performance was deficient.

- 8 -

> This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Fedor must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the

judgment." 466 U.S. at 691–92.  To meet this burden, Fedor must show "a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different.  A reasonable probability is a probability

sufficient to undermine confidence in the outcome."  466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of

law and facts relevant to plausible options are virtually unchallengeable; and strategic

choices made after less than complete investigation are reasonable precisely to the

extent that reasonable professional judgments support the limitations on

investigation."  466 U.S. at 690–91.  Fedor cannot meet his burden merely by

showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would
> have done.  Nor is the test even what most good lawyers would
> have done. We ask only whether some reasonable lawyer at the
> trial could have acted, in the circumstances, as defense counsel
> acted at trial . . . . We are not interested in grading lawyers'
> performances; we are interested in whether the adversarial
> process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).  *Accord Chandler v. United*

*States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers,

in every case, could have done something more or something different.  So,

omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent

or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting*

*Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  The required extent of counsel's

investigation was addressed recently in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267

(11th Cir. 2014), *cert. denied sub nom., Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to investigate
> particular facts or a certain line of defense." *Chandler*, 218 F.3d
> at 1317. "[C]ounsel has a duty to make *reasonable* investigations
> or make a *reasonable* decision that makes particular
> investigations unnecessary." *Strickland*, 466 U.S. at 691, 104
> S. Ct. at 2066 (emphasis added). "[C]ounsel need not always
> investigate before pursuing or not pursuing a line of defense.
> Investigation (even a nonexhaustive, preliminary investigation)
> is not required for counsel reasonably to decline to investigate a
> line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In
> assessing the reasonableness of an attorney's investigation . . . a
> court must consider not only the quantum of evidence already
> known to counsel, but also whether the known evidence would
> lead a reasonable attorney to investigate further." *Wiggins*, 539
> U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a

frivolous claim).

Although the *Strickland* standard controls a claim that counsel was ineffective

in recommending that a client plead guilty, *Hill v. Lockhart*, 474 U.S. 52 (1985), *Agan

v. Singletary*, 12 F.3d 1012 (11th Cir. 1994), greater evidence is needed to prove both

deficient performance and prejudice if the client pleads guilty.  "[C]ounsel owes a

lesser duty to a client who pleads guilty than to one who decided to go to trial, and in

the former case counsel need only provide his client with an understanding of the law

in relation to the facts, so that the accused may make an informed and conscious

choice between accepting the prosecution's offer and going to trial."  *Wofford v.

Wainwright*, 748 F.2d 1505, 1508 (11th Cir. 1984).  And to prove prejudice, "the

defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59.

Fedor must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788. *See also Pinholster*, 131 S. Ct. at 1410 (An applicant  must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 134 S. Ct. 191 (2013).

The post-conviction court conducted an evidentiary hearing and applied *Strickland* in denying the claims of ineffective assistance of counsel.  (Respondent's Exhibit 19 at 428–29)  Because the state court correctly recognized that *Strickland* governs each claim of ineffective assistance of counsel, Fedor cannot meet the "contrary to" test in Section 2254(d)(1).  Fedor instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts.  In determining "reasonableness," a federal application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable.  *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002).  The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

Fedor's two grounds of ineffective assistance both involve Fedor's competence.  The first ground challenges Fedor's competency when he committed the criminal offenses and the second ground challenges his competency when he pleaded guilty.

**Ground One:**

Fedor asserts that he was incompetent when he assaulted the victim.  Fedor retained defense counsel to defend the burglary and false imprisonment charges.  Defense counsel knew Fedor because he had represented Fedor in an earlier case, and Fedor's competence was not an issue in the earlier case.  (Respondent's Exhibit

18 at 475–76)  Nevertheless, trial counsel initially questioned Fedor's competence in the burglary and false imprisonment case.  Trial counsel ceased the mental competence evaluation after learning that, during a telephone call while detained in the county jail, Fedor told a friend that he would act crazy to avoid imprisonment.

Fedor alleges that trial counsel rendered ineffective assistance by both abandoning incompetency as a defense and advising Fedor to plead guilty.  The post-conviction court denied this claim as follows (Respondent's Exhibit 19 at 429–31) (citations to the record omitted) (brackets original):

> Defendant alleges ineffective assistance of counsel for abandoning Defendant's incompetency defense and for advising him to enter an open guilty plea. Specifically, Defendant contends that counsel questioned Defendant's competency, and had the trial court appoint two experts for a competency evaluation, but then, after only one evaluation, counsel advised Defendant to enter an open plea.
>
> At the evidentiary hearing, Defendant's prior defense counsel testified that, although he did motion the court for Defendant to be evaluated, he did not follow through with the evaluations after hearing a recorded phone call from the jail in which Defendant referenced that he would feign mental health issues in an effort to avoid incarceration. Faced with that evidence, counsel testified, counsel chose to not go forward with the evaluations, for fear that the court would impose a harsher sentence upon learning of Defendant's plan. Specifically, counsel testified as follows:
>
> > DEFENSE COUNSEL: State Attorney Peters played a jail call to me. And I don't know if verbatim, but in essence [Defendant] was talking to his friend and he said that if I act crazy or something I won't go to prison. Something to that effect.

THE STATE: And did you — did that lead you to believe that [Defendant] was feigning some mental health issues in order to be declared incompetent?

DEFENSE COUNSEL: That probably would did cross my mind and I know that is a very tough court and I believe that it would've been in [Defendant]'s best interests not to do something down that path and perhaps be a little more candid with the Court to avoid any type of lengthy, lengthy sentence in this matter.

THE STATE: And so in fact the prosecutor had provided the — a recording of the jail phone call to the doctors that had been appointed, is that — was that your understanding?

DEFENSE COUNSEL: I don't know if they provided it to the doctors, but I know that they provided it to me.

THE STATE: Okay. And you were concerned that that could cause [Defendant] problems in the future in terms of his sentencing?

DEFENSE COUNSEL: I would say in the future of perhaps going down that path in this case. You know, if someone is trying to perpetuate something like that I'm not going to present it to the Court. I'm just not.

Counsel testified further that, based on the fact that the State was making no offers to Defendant and the fact that he would face life in a trial in which there would be overwhelming evidence against him, a highly motivated victim, and a lack of viable defenses to the charges, counsel advised Defendant to enter an open plea as his only means of possibly receiving a sentence less than life. The Court finds counsel's testimony to be credible, and finds that counsel cannot be deemed deficient for not pursuing Defendant's competency evaluations and for advising him to enter an open plea under these circumstances. For these reasons, the Court finds that Defendant warrants no relief on these allegations . . . .

The post-conviction court accepted trial counsel's testimony over that of Fedor at the evidentiary hearing.  A federal court must defer to the state court's findings of fact.  28 U.S.C. § 2254(e)(1).  This deference applies to a credibility determination that resolves conflicting testimony, as *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998), *cert. denied*, 526 U.S. 1047 (1999), instructs:

> We must accept the state court's credibility determination and thus credit [the attorney's] testimony over [the petitioner's]. *Coulter v. Herring*, 60 F.3d 1499, 1503 (11th Cir. 1995) (applying the statutory presumption of correctness under § 2254(d) to the state court's credibility determination), *cert. denied*, 516 U.S. 1122 (1996).

The deference is heightened when reviewing a credibility determination in a Section 2254 application.  *Gore v. Sec'y, Dep't of Corr.*, 492 F. 3d 1273, 1300 (11th Cir. 2007), *cert. denied*, 552 U.S. 1190 (2008).  *Accord Kurtz v. Warden, Calhoun State Prison*, 541 Fed. App'x 927, 929 (11th Cir. 2013) ("'A certain amount of deference is always given to a trial court's credibility determinations,' and a credibility determination in a case on habeas review receives heightened deference.") (quoting *Gore*), *cert. denied sub nom. Kurtz v. Jeanes*, 134 S. Ct. 2728 (2014).  The post-conviction court determined that, based on trial counsel's credible testimony, not further pursuing an incompetency defense but instead pleading guilty afforded Fedor the best chance of possibly avoiding a sentence of life imprisonment.

Trial counsel must decide which strategic and tactical option to pursue, such as deciding which witness or defense to present.  *See e.g., Dingle v. Sec'y, Dep't of Corr.*,

480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision [to not call a certain witness] appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent attorney would have chosen it.'"), *quoting Adams v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983), *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.") (*en banc*), and *Blanco v. Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel.").

The *Strickland* test requires a court to determine whether counsel's strategic decision was "reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000) ("The relevant question is not whether counsel's choices were strategic, but whether they were reasonable."); *Minton v. Sec'y, Dep't of Corr.*, 271 Fed. App'x 916, 918 (11th Cir. 2008) ("The Supreme Court has 'declined to articulate specific guidelines for appropriate attorney conduct and instead has emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'") (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)).  Similarly, deciding the reasonableness of counsel's actions is not viewed through the lense of twenty-twenty hindsight.  *Strickland*, 466 U.S. at 690 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.").  And

in a habeas corpus proceeding the federal court's duty is not to independently determine the reasonableness of counsel's actions, but "to determine whether the state habeas court was objectively reasonable in its *Strickland* inquiry." *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002).

The post-conviction court's denying Fedor's claim was neither an unreasonable application of *Strickland* nor an unreasonable determination of the facts. Consequently, Fedor is not entitled to relief based on ground one.

**Ground Two:**

Fedor alleges that trial counsel rendered ineffective assistance by permitting him to plead guilty while Fedor was under the influence of psychotropic medication. The post-conviction court denied this claim as follows (Respondent's Exhibit 19 at 431–33) (citations to the record omitted) (footnote omitted):

> Defendant alleges ineffective assistance of counsel for encouraging Defendant to enter an open guilty plea while Defendant was under the influence of a psychotropic narcotic, rendering his plea involuntary. Defendant contends that he was under the influence of Thorazine, and that counsel knew this, and yet still encouraged him to enter a plea while failing to advise the court of Defendant's impairment.

> For a defendant to warrant relief on a claim of ineffective assistance of counsel rendering a plea involuntary, the defendant must demonstrate a reasonable probability that, but for the alleged deficiency, the defendant would not have pleaded guilty and would have insisted on proceeding to trial. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985). In determining whether a reasonable probability of such exists, a court should consider the totality of the circumstances surrounding the plea, including such factors as whether a particular defense was likely to succeed at trial, the colloquy between the defendant and the

trial court at the time of the plea, and the difference between the
sentence imposed under the plea and the maximum possible
sentence the defendant faced at a trial. *See Grosvenor v. State*,
814 So. 2d 1176, 1181–1182 (Fla. 2004).

At the evidentiary hearing, counsel testified that, on the day
Defendant entered his plea, counsel believed Defendant
understood the serious ramifications of doing so, and testified
that he would not have allowed Defendant to enter a plea that
day had he had any concerns about Defendant's competency to
do so or ability to understand his plea proceeding. He testified
further that, based on the fact that the State was making no
offers to Defendant and the fact that he would face life in a trial
in which there would be overwhelming evidence against him, a
highly-motivated victim, and a lack of viable defenses to the
charges, counsel advised Defendant to enter an open plea as his
only means of possibly receiving a sentence less than life. In
support of his allegation, Defendant presented expert testimony
that the medications Defendant had been taking at the time of
his plea could create an artificial sense of calm and lack of
concern that could interfere with a person's ability to knowingly
and voluntarily agree to something of great concern in their life.
Although credible testimony, the Court finds that, even if this
medication could have affected Defendant's competency to
enter a plea as the expert witness testified, such does not
demonstrate that it did in fact affect his competency to enter a
plea. Rather, the testimony at the evidentiary hearing supports
that Defendant understood why he was entering an open plea
and that such was his best chance to get a sentence less than
life. In reviewing the evidentiary hearing in full and considering
the *Grosvenor* factors as applied to Defendant's case, this Court
finds that there is not a reasonable probability that Defendant
would not have entered a plea and would have proceeded to
trial. As such, Defendant cannot demonstrate prejudice as a
result of counsel's alleged deficiency, and thus warrants no
relief on this claim . . . .

The post-conviction rejected Fedor's claim after (1) finding that Fedor

presented no evidence that the medication actually impaired his mental acuity to

understand the proceedings and (2) accepting trial counsel's opinion that Fedor

understood the seriousness of his decision to plead guilty.  The post-conviction

court's credibility determination is due "heightened deference." *Kurtz*, 541 Fed.

App'x at 929.  Trial counsel's opinion is due additional credence because counsel

knew Fedor's faculties from having represented Fedor in an earlier case.  Trial

counsel also testified (1) that, after terminating the competency evaluation process,

he knew that the jail's medical personnel were administering Thorazine to Fedor,

(2) that he never "had new concerns about [Fedor's] competency prior to him

entering the plea," and (3) that he would not have allowed Fedor "to go through

with entering the plea on that particular date" if he had a concern about Fedor's

competency.  (Respondent's Exhibit 18 at 480 and 486)

　　　The post-conviction court determined that, even if counsel had performed

deficiently, Fedor could prove no prejudice because (1) his only chance for possibly

avoiding a sentence of life imprisonment was to plead guilty and (2) his loss of the

contrived "incompetency" defense left him with no defense to the charges, especially

without identity as an issue.  The post-conviction court's denying Fedor's claim was

neither an unreasonable application of *Strickland* nor an unreasonable determination

of the facts.  Consequently, Fedor is not entitled to relief based on ground one.

## CONCLUSION

　　　To summarize, Fedor fails to meet his burden to show that the state court's

decision was either an unreasonable application of controlling Supreme Court

precedent or an unreasonable determination of fact.  As *Burt v. Titlow*, 134 S. Ct. 10,

15–16 (2013), recognizes, this burden is very difficult to meet:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. ___, ___, 131 S. Ct. 770, 786–787, 178 L. Ed. 2d 624 (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at ___, 131 S. Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at___, 131 S. Ct., at 786 (internal quotation marks omitted).

Accordingly, Fedor's amended application for the writ of habeas corpus (Doc. 44) is **DENIED**. The clerk must enter a judgment against Fedor and close this case.

## DENIAL OF BOTH
## A CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Fedor is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Fedor must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d

926, 935 (11th Cir 2001).  Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Fedor is entitled to neither a COA nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Fedor must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on March 7, 2016.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE